1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ARTURO LINARES,

             Plaintiff,

    v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

             Defendant.

Case No. CV 14-3524 JC

MEMORANDUM OPINION AND
ORDER OF REMAND

## I.   SUMMARY

On May 13, 2014, plaintiff Arturo Linares ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits.  The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The Court has taken both motions under submission without oral argument.  See Fed. R. Civ. P. 78; L.R. 7-15; May 14, 2014 Case Management Order ¶ 5.

///
///

1

1    Based on the record as a whole and the applicable law, the decision of the
2    Commissioner is REVERSED AND REMANDED for further proceedings
3    consistent with this Memorandum Opinion and Order of Remand.

4  **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**
5  **DECISION**

6    On September 29, 2010, plaintiff filed an application for Disability
7    Insurance Benefits.  (Administrative Record ("AR") 33, 174).  Plaintiff asserted
8    that he became disabled on June 18, 2009, due to spinal injury, and problems
9    walking and standing.  (AR 33, 209).  The Administrative Law Judge ("ALJ")
10   examined the medical record and heard testimony from plaintiff (who was
11   represented by counsel and assisted by a Spanish language interpreter) and a
12   vocational expert on December 17, 2012.  (AR 57-90).

13   On January 25, 2013, the ALJ determined that plaintiff was not disabled
14   through the date of the decision.  (AR 33-42).  Specifically, the ALJ found:
15   (1) plaintiff suffered from the following severe impairments:  lumbar spine
16   degenerative disc disease status post L4-S1 fusion and L4-L5 laminectomy (2009)
17   with chronic residuals, and borderline intellectual functioning (AR 35);
18   (2) plaintiff's impairments, considered singly or in combination, did not meet or
19   medically equal a listed impairment (AR 36-37); (3) plaintiff retained the residual
20   functional capacity to perform light work (20 C.F.R. § 404.1567(b)) with
21   additional limitations[1] (AR 37); (4) plaintiff could not perform his past relevant
22   work (AR 40); (5) there are jobs that exist in significant numbers in the national
23   economy that plaintiff could perform, specifically garment sorter, electronics

24   _____

25       [1]The ALJ determined that plaintiff (i) could exert up to 20 pounds of force occasionally
26   and/or up to 10 pounds of force frequently and/or a negligible amount of force constantly to
     move objects; (ii) could stand and walk up to six hours and sit up to six hours in an eight-hour
27   workday with normal breaks; (iii) could not crawl and could not climb ladders, ropes or
     scaffolds; (iv) could only occasionally stoop, kneel, crouch, and climb ramps or stairs; and
28   (v) was "not able to effectively communicate in English" (AR 37).

worker, and cloth-stock sorter (AR 41); and (6) plaintiff's allegations regarding his limitations were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment (AR 40).

The Appeals Council denied plaintiff's application for review.  (AR 5).

## III.  APPLICABLE LEGAL STANDARDS

### A.  Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted).  The impairment must render the claimant incapable of performing the work the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

> (1)  Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.
>
> (2)  Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.
>
> (3)  Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

///

3

(4)     Does the claimant possess the residual functional capacity to perform claimant's past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

(5)     Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at 1110 (same).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of proving disability).

**B.     Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and

4

1  evidence that detracts from the [Commissioner's] conclusion.'"  <u>Aukland v.</u>
2  <u>Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting <u>Penny v. Sullivan</u>, 2 F.3d
3  953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming
4  or reversing the ALJ's conclusion, a court may not substitute its judgment for that
5  of the ALJ.  <u>Robbins</u>, 466 F.3d at 882 (citing <u>Flaten</u>, 44 F.3d at 1457).

6  **IV.  DISCUSSION**

7          Plaintiff contends that the ALJ erred at step five because the language
8  requirements of the representative occupations identified by the vocational expert
9  upon whose opinion the ALJ relied, as described in the Dictionary of Occupational
10  Titles, are inconsistent with plaintiff's inability effectively to communicate in
11  English and the vocational expert did not acknowledge or address such
12  inconsistency.  (Plaintiff's Motion at 8-10).  The Court agrees.  As the Court
13  cannot find that the ALJ's error was harmless, a remand is warranted.

14          **A.     Pertinent Law**

15          At step five, the Commissioner must establish that there is other work that
16  exists in "significant numbers" in the national economy that the claimant can
17  perform, taking into account the claimant's residual functional capacity, age,
18  education, and work experience.  <u>Tackett</u>, 180 F.3d at 1100 (citing 20 C.F.R.
19  § 404.1560(b)(3)); <u>see also</u> 20 C.F.R. § 416.960(b)(3); 42 U.S.C. § 423(d)(2)(A).
20  Where a claimant suffers from only exertional impairments (*i.e.*, "strength-related
21  limitations"), the Commissioner must satisfy this burden by consulting the
22  Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P,
23  Appendix 2 (commonly referred to as "the Grids").  <u>Cooper v. Sullivan</u>, 880 F.2d
24  1152, 1155 & n.6 (9th Cir. 1989) (citations omitted).  Where a claimant suffers
25  solely from nonexertional impairments (*e.g.*, "mental, sensory, postural,
26  manipulative, and environmental limitations"), the Grids do not apply, and the
27  ///
28  ///

5

1 | ALJ must rely on other evidence. Id. at 1155 & n.7 (citations omitted); 20 C.F.R.
2 | Part 404, Subpart P, Appendix 2 § 200.00(e)(1).

3 |      Where, like here, a claimant has both exertional limitations that, on their
4 | own, do not support a finding of disability under the Grids, and nonexertional
5 | limitations that are "sufficiently severe"[2] such that the Grids are inapplicable, the
6 | ALJ must obtain evidence from a vocational expert. Hoopai v. Astrue, 499 F.3d
7 | 1071, 1076 (9th Cir. 2007); Lounsbury v. Barnhart, 468 F.3d 1111, 1116 (9th Cir.
8 | 2006). The ALJ asks the vocational to identify representative jobs in the national
9 | economy that a hypothetical individual with the same characteristics as the
10 | claimant would be able to do. Tackett, 180 F.3d at 1101. The vocational expert's
11 | testimony in response may constitute substantial evidence of the claimant's ability
12 | to perform such jobs if the ALJ's hypothetical question included all of the
13 | claimant's limitations supported by the record. See Robbins, 466 F.3d at 886;
14 | Lewis v. Apfel, 236 F.3d 503, 517 (9th Cir. 2001) ("If the record does not support
15 | the assumptions in the hypothetical, the vocational expert's opinion has no
16 | evidentiary value.").

17 |      An ALJ may not rely on a vocational expert's testimony that deviates from
18 | pertinent job descriptions in the Dictionary of Occupational Titles ("DOT")[3]
19 | unless the record contains "persuasive evidence to support the deviation." Pinto v.

20 |

---

[2]At step five, a claimant's nonexertional limitations are considered "sufficiently severe" if they "significantly limit the range of work permitted by the claimant's exertional limitations." Hoopai, 499 F.3d at 1076 (citations and quotation marks omitted). "The step two and step five determinations require different levels of severity of limitations such that the satisfaction of the requirements at step two does not automatically lead to the conclusion that the claimant has satisfied the requirements at step five." Id.

[3]ALJs routinely consult the DOT "in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy." Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); see also 20 C.F.R. §§ 404.1566(d)(1); 416.966(d)(1) (DOT is source of "reliable job information"); Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995) ("DOT raises [rebuttable] presumption as to [] job classification. . . .").

1  <u>Massanari</u>, 249 F.3d 840, 846 (9th Cir. 2001) (quoting <u>Johnson v. Shalala</u>, 60 F.3d

2  1428, 1435 (9th Cir. 1995)).  The ALJ must affirmatively ask the vocational expert

3  whether his or her opinion contradicts information in the DOT, and must "obtain a

4  reasonable explanation for any apparent conflict."  <u>Massachi v. Astrue</u>, 486 F.3d

5  1149, 1152-53 (9th Cir. 2007) (citing Social Security Ruling ("SSR") 00-4p).[4]

6  "Evidence sufficient to permit such a deviation may be either specific findings of

7  fact regarding the claimant's residual functionality, [citation] or inferences drawn

8  from the context of the vocational expert's testimony."  <u>Light v. Social Security</u>

9  <u>Administration</u>, 119 F.3d 789, 793 (9th Cir. 1997) (citations omitted).

10        All occupations listed in the DOT include a General Educational

11  Development ("GED") component which describes the general educational

12  requirements of each particular job.  <u>See</u> DOT, Appendix C - Components of the

13  Definition Trailer ("DOT Appendix C"), 1991 WL 688702 (1991) ("General

14  Educational Development embraces those aspects of education (formal and

15  informal) which are required of the worker for satisfactory job performance.").

16  The GED scale is comprised of three discrete divisions, namely Reasoning

17  Development, Mathematical Development, and Language Development.  <u>Id.</u>  The

18  Language Development division contains six levels ranging from Level 1 (*i.e.*, the

19  lowest level of language development) to Level 6 (the highest).  <u>Id.</u>  Language

20  Development Levels 1 and 2 are described as follows:

21        Level 1        Reading:  Recognize meaning of 2,500 (two- or three-syllable)

22                                       words.  Read at rate of 95-120 words per minute.  Compare

23  _____

24        [4]Although they do not carry the "force of law," Social Security Rulings are binding on
   ALJs.  <u>See</u> 20 C.F.R. § 402.35(b)(1); <u>Bray v. Commissioner of Social Security Administration</u>,

25  554 F.3d 1219, 1224 (9th Cir. 2009) (citation and internal quotation marks omitted).  Such
   rulings "reflect the official interpretation of the [Social Security Administration] and are entitled

26  to some deference as long as they are consistent with the Social Security Act and regulations."

27  <u>Molina v. Astrue</u>, 674 F.3d 1104, 1113 n.5 (9th Cir. 2012) (citations and internal quotation marks
   omitted); <u>see also</u> <u>Heckler v. Edwards</u>, 465 U.S. 870, 873 n.3 (1984) (discussing weight and

28  function of Social Security rulings).

similarities and differences between words and between series of numbers.  [¶] Writing:  Print simple sentences containing subject, verb, and object, and series of numbers, names, and addresses.  [¶] Speaking:  Speak simple sentences, using normal word order, and present and past tenses.

Level 2       Reading:  Passive vocabulary of 5,000-6,000 words.  Read at rate of 190-215 words per minute.  Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation.  Read instructions for assembling model cars and airplanes.  [¶] Writing:  Write compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs.  [¶] Speaking:  Speak clearly and distinctly with appropriate pauses and emphasis, correct punctuation, variations in word order, using present, perfect, and future tenses.

DOT Appendix C.

As noted above, at step five an ALJ must take into account a claimant's education when evaluating what other work, if any, the claimant could do.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1564(a), 416.964(a).  One educational factor is the claimant's ability to communicate (*i.e.*, "speak, read and understand") in English.  See Chavez v. Department of Health and Human Services, 103 F.3d 849, 852 (9th Cir. 1996) ("The 'ability to communicate in English' is defined [in Social Security Regulations] as 'the ability to speak, read and understand English.'") (citing 20 C.F.R. § 404.1564(b)(5) ("Because English is the dominant language of the country, it may be difficult for someone who doesn't speak and understand English to do a job, regardless of the amount of education the person may have in another language."), 20 C.F.R. § 416.964(b)(5) (same)).  A claimant ///

1  who cannot effectively communicate in English is not *per se* disabled.[5]  <u>See, e.g.,</u>

2  <u>Pinto</u>, 249 F.3d at 847.  Nonetheless, if the language requirements for a

3  representative job identified by the vocational expert are inconsistent with the

4  claimant's abilities, the ALJ must "definitively explain [the] deviation."  <u>Id.</u>

5  (noting requirement in connection with step four analysis); SSR 00-4P at *4 (If [a

6  vocational expert's] . . . evidence appears to conflict with the DOT, the [ALJ must]

7  obtain a reasonable explanation for the apparent conflict. . . [and] explain in the

8  . . . decision how he or she resolved the conflict"); <u>see, e.g.,</u> <u>Herrera v. Colvin</u>,

9  2014 WL 3572227, *10 (C.D. Cal. July 21, 2014) (at step five ALJ was required

10  to consider claimant's "inability to communicate in English" when determining

11  what jobs were available to claimant) (citing <u>id.</u> at 846).

12       **B.   Analysis**

13       Here, the ALJ erred at step five because he found plaintiff not disabled

14  based on testimony from the vocational expert which, without explanation,

15  deviated from the DOT.

16       First, the vocational expert's testimony deviated from the DOT.  The

17  hypothetical question the ALJ posed at the administrative hearing described an

18  individual who, among other things, was "not able to effectively communicate in

19

20

---

21      [5]According to the DOT, every job in the national economy requires at least Language

Development Level 1.  <u>Donahue v. Barnhart</u>, 279 F.3d 441, 445 (7th Cir. 2002) ("It turns out that

22  whoever wrote the Dictionary believes that basic literacy (defined as a vocabulary of 2,500

words, the ability to read about 100 words a minute, and the ability to print simple sentences) is

23  essential for every job in the economy. . . .") (citations omitted).  Consequently, where a claimant

is unable to communicate in English, a vocational expert's opinion that the claimant could do any

24  occupation necessarily deviates from the DOT.  <u>See, e.g.,</u> <u>Clark v. Astrue</u>, 2011 WL 1544204 *6

(C.D. Cal. Apr. 25, 2011) ("Someone who is illiterate obviously would be presumptively

25  precluded from language level 1 and 2 jobs.").  Nonetheless, the DOT's "general" job

descriptions do not apply in all situations.  <u>Massachi</u>, 486 F.3d at 1153 n.17 (citing SSR 00-4P at

26  *2-*3).  Thus, as noted above, in such cases the ALJ may rely on a vocational expert's testimony

27  only if the record contains "persuasive evidence to support the deviation."  <u>Pinto</u>, 249 F.3d at 846

(citation omitted).

28

1  English." (AR 84).  The vocational expert testified that, despite such limitation,

2  plaintiff (or a hypothetical person with plaintiff's characteristics) could perform

3  the occupations of garment sorter (which, according to the DOT, requires Level 1

4  Language Development), electronics worker (a Language Level 2 occupation), and

5  cloth-stock sorter (also Language Level 2).  (AR 84-85); DOT §§ 222.687-014

6  ("Garment Sorter"), 726.687-010 ("Electronics Worker"), 789.687-034 ("Cloth-

7  Stock Sorter").  Nonetheless, an individual like plaintiff – who, according to the

8  ALJ, was "[unable] to communicate in English" and "considered in the same way

9  as an individual who [was] illiterate in English," (AR 40) (citing 20 C.F.R.

10  § 404.1564) – apparently would be precluded from such occupations.  For

11  example, the occupation of garment sorter, which is at the DOT's *lowest* Language

12  Development level, still requires, in part, the ability to read and understand the

13  meaning of 2,500 words and speak simple, grammatically correct sentences.  DOT

14  Appendix C; Pinto, 249 F.3d at 843-44 & nn. 1, 2.  Such requirements are

15  inconsistent with plaintiff's language abilities.  See, e.g., Pinto, 249 F.3d at 843 &

16  n.1 (requirements of Language Level 1 occupations inconsistent with abilities of

17  claimant who could speak Spanish but spoke "very little English," and whom the

18  ALJ found "illiterate in English"); Guzman v. Astrue, 2010 WL 1929563, *2

19  (C.D. Cal. May 10, 2010) (vocational expert's testimony that claimant – who "was

20  not proficient in English" – could perform prior Level 1 language job deviated

21  from DOT); Diaz v. Astrue, 2009 WL 176316, *4 (C.D. Cal. Jan. 26, 2009) (where

22  claimant could speak Spanish but "[was] not able to communicate in English,"

23  vocational expert's testimony that claimant could do Language Level 1 jobs

24  deviated from DOT); see also Pinto, 249 F.3d at 846 & n.4 (noting that, for

25  purposes of Social Security claims, "Illiteracy [in English] is subsumed under

26  inability to communicate in English."); but see Meza v. Astrue, 2011 WL 11499,

27  *21 (N.D. Cal. Jan. 4, 2011) (claimant's "illiteracy" not inconsistent with

28  Language Level 1 jobs).

Second, the vocational expert basically denied that her opinion conflicted with the DOT's language requirements for the three representative jobs (AR 88-89).  Consequently, neither the vocational expert nor the ALJ provided any persuasive explanation for the deviation.  (AR 41-42, 78-90).  Accordingly, the vocational expert's testimony, which the ALJ adopted, could not serve as substantial evidence supporting the ALJ's determination at step five that plaintiff could perform the occupations of garment sorter, electronics worker, and cloth-stock sorter.  See Pinto, 249 F.3d at 846; Guzman v. Astrue, 2010 WL 1929563, *2 (C.D. Cal. May 10, 2010) (vocational expert's testimony entitled to "no weight" where vocational expert opined that a claimant who was "[unable to] read, write, or speak English" could still perform plaintiff's past relevant work, but erroneously testified that the opinion did not deviate from the DOT).

Finally, the Court cannot find such error harmless as defendant points to no persuasive evidence in the record which otherwise could support the ALJ's determination at step five that plaintiff was not disabled.  See Pinto, 249 F.3d at 846-47 (remand warranted where ALJ found claimant not disabled at step four based "largely" on vocational expert's testimony that conflicted with DOT, neither ALJ nor vocational expert addressed the deviation, and ALJ otherwise "made very few findings"); see, e.g., Clark, 2011 WL 1544204 at *6 (noting "[n]umerous cases" reversing Commissioner where ALJ failed to explain inconsistency between a claimant's language limitations and Language Level 1 and 2 jobs) (citing cases); Diaz, 2009 WL 176316, *4 (remanding where "the jobs cited by the vocational expert and relied upon by the ALJ, which require at least Language Level 1 proficiency, deviated from plaintiff's [inability to communicate in English] without persuasive evidence to support the deviation.") (citing Johnson, 60 F.3d at 1435).  As defendant suggests, there may be a sufficient explanation for the apparent inconsistency between plaintiff's language abilities and the Language Development levels of the representative occupations – e.g., plaintiff's inability to

communicate in English might not significantly erode the number of available positions in the representative occupations (especially considering that plaintiff's prior relevant work included Language Level 1 occupations), or the limitations may not prevent plaintiff from doing some other "simple work" in the national economy.  (Defendant's Motion at 4-9).  The Court may not affirm the ALJ's non-disability determination on such grounds, however, because the ALJ did not so state in the administrative decision.  See Molina, 674 F.3d at 1121 (citing Securities and Exchange Commission v. Chenery Corp., 332 U.S. 194, 196(1947)) ("[courts] may not uphold an [ALJ's] decision on a ground not actually relied on by the agency"); Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts.").

///
///
///
///
///
///
///
///
///
///
///
///
///
///

12

1  **V.    CONCLUSION**[6]

2      For the foregoing reasons, the decision of the Commissioner of Social

3  Security is reversed in part, and this matter is remanded for further administrative

4  action consistent with this Opinion.[7]

5      LET JUDGMENT BE ENTERED ACCORDINGLY.

6  DATED:   October 31, 2014

7                                             /s/

8                              Honorable Jacqueline Chooljian
                               UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22  _____

23  [6]The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's
    decision, except insofar as to determine that a reversal and remand for immediate payment of
24  benefits would not be appropriate.

25      [7]When a court reverses an administrative determination, "the proper course, except in rare
    circumstances, is to remand to the agency for additional investigation or explanation."
26  Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and
    quotations omitted).  Remand is proper where, as here, "additional proceedings can remedy
27  defects in the original administrative proceeding. . . ." Garrison v. Colvin, 759 F.3d 995, 1019
    (9th Cir. 2014) (citation and internal quotation marks omitted).
28